UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY B. TUTTLE,<br>    Plaintiff,<br><br>    v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br>    Defendant. | No. 3:17-cv-00100-VAB |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Gary Tuttle ("Plaintiff") filed this lawsuit on January 23, 2018, alleging that the Prudential Insurance Company of America ("Prudential" or "Defendant"), failed to provide him with long term disability benefits. Compl., ECF No. 1. Prudential has now moved to dismiss the Complaint. *See* Def. Mot. Dismiss, ECF No. 12.

For the reasons stated below, the motion to dismiss is **DENIED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

   **A.    Factual Allegations**

Mr. Tuttle, a resident of Connecticut, Compl. ¶ 1, worked as a Field Service Representative for CDK Global, Inc., a company based in Illinois. *Id.* ¶¶ 7–8.

Prudential, an insurance company incorporated in New Jersey, *id.* ¶ 2, issued a long term disability group policy ("the policy") to CDK Global, Inc., for the benefit of CDK Global employees who would, in return, pay premiums to maintain the policy. *Id.* ¶¶ 8, 12.

The policy provided "financial protection" for employees by paying a portion of their income "while [they] have a long period of disability." CDK Global, Inc. Group Contract G-

51856-IL ("Policy") at 21, Def. Mot. to Dismiss, Ex. A, ECF No. 12-2.[1] An employee's income before any disability determined the amount of disability benefits an employee could receive, and the policy allowed "[i]n some cases, you can receive disability payments even if you work while you are disabled." *Id.*

Prudential's policy included the following definition:

> You are disabled when Prudential determines that:
> - you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury***; and
> - you are under the ***regular care*** of a ***doctor***; and
> - you have a 20% or more loss in your ***monthly earnings*** due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
> - you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
> - you are under the regular care of a doctor.

*Id.* at 30 (emphasis in original). The policy further defines "material and substantial duties" as those "normally required for the regular performance" of an employee's job and which "cannot be reasonably omitted or modified . . . ." *Id.*

The policy also includes several other relevant definitions. Under the policy, regular occupation "means the occupation you are routinely performing when your disability begins." *Id.* Regular care is defined as meaning "you personally visit a doctor as frequently as is medically

---

[1] The Court finds that the denial letters and administrative appeals process documents are incorporated into the Complaint by reference and therefore it may consider these documents when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.") (internal quotation marks and citations omitted). Citations to these documents will be to the ECF document's pagination.

required" and that "you are receiving the most appropriate treatment and care," both according to "generally accepted medical standards." *Id.* at 31.

If an individual covered under the policy meets the definition of disability, he or she is entitled to either sixty percent of the monthly earnings or $15,000, whichever is less. *Id.* at 33. The policy also specifies several deductible sources of income that might reduce the award. *Id.* The policy does not cover pre-existing conditions. *Id.* at 41.

In order to claim benefits, an employee must follow the claims procedure specified in the policy. A covered employee must submit a claim within 90 days after a set period, accompanied by documentation of the injury, medical care, and earnings. *Id.* at 46. The policy further provided that an employee "can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law." *Id*. at 48. Once filed, Prudential had forty-five days to respond to a claim. Summary Plan Description at 55, Def. Mot. to Dismiss, Ex. A, ECF No. 12-2. If denied, "in whole or in part, [the employee or] authorized representative will receive a written notice" explaining the denial. *Id.*

Following that written notice, an employee "may appeal [his or her] denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied." *Id.* at 56. Prudential would then have an additional forty-five days to respond to the appeal. After the appeal decision was rendered, an employee "may take a second, voluntary appeal" within one hundred and eighty days. The claims policy noted: "Your decision to submit a benefit dispute to this voluntary second level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without

submitting to a second level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies." *Id.* at 57.

Mr. Tuttle alleges that, at all times relevant to the lawsuit, he "was and is an employee eligible for disability benefits and an insured under the Policy . . . ." Compl. ¶ 13. He alleges that he became disabled on September 18, 2015, caused by lumbar disc disease, cervical disc disease, and a history of mantle cell lymphoma. *Id.* ¶¶ 16–17. Mr. Tuttle's work required that he drive thirty percent of the work day and carry fifty pounds, but his treating physician limited him to driving no more than one hour per work day and carrying less than twenty pounds at a time. *Id.* ¶¶ 18–19. Mr. Tuttle alleges that this was a permanent restriction. *Id.* ¶ 19.

After receiving short-term benefits for the maximum duration, Mr. Tuttle applied for long-term disability benefits under the policy. *Id.* ¶¶ 20–21. Prudential denied the claim on May 6, 2016. *See id.* ¶ 21; Letter from Marisa A. Clark, Senior Claims Manager, to Gary Tuttle, ("May Letter"), Pl. Opp., Ex. B., ECF No. 17-2. The letter stated that, despite Mr. Tuttle's treating physicians' opinions to the contrary, "[b]ased on the review of the file, we find no medically supported restrictions and limitations that would preclude you from returning to work to your regular occupation." May Letter at 1. The letter stated that "[Mr. Tuttle had] reported a history of cervical and lumbar pain" and that he linked that pain, at least in part, to a motor vehicle accident, but disputed when that accident occurred. *Id.* at 2. It also noted that Mr. Tuttle had been diagnosed with mantel cell non-Hodgkin's lymphoma in 2011. *Id.*

Prudential concluded that Mr. Tuttle's injuries were not covered because it found that he had "worked in the past with this same condition and [he was] not in any intensity of treatment that would support [he was] not able to work full time." *Id.* The company stated that the information in Mr. Tuttle's file did not show he could not "perform[] material and substantial

4

duties of your regular occupation" and, therefore, it did not show that he met the definition of disability in the policy. *Id.* at 3.

The letter also stated that Mr. Tuttle had "the right to appeal" and included additional documents specifying the procedure. *Id.* The documents stated that Mr. Tuttle could, if he chose, "file a voluntary second appeal." *Id.* at 6. But "[a]fter completion of the first level of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a second appeal will not affect your rights to sue under ERISA." *Id.*

Mr. Tuttle appealed the denial. Prudential then sent Mr. Tuttle a second letter stating that the company had "determined that you are eligible for additional benefits and have reinstated your claim" for an additional two days. Letter from Marisa A. Clark, Senior Claims Manager, to Gary Tuttle, ("July Letter"), Pl. Opp., Ex. F, ECF No. 17-6. Benefits beyond those two days, i.e. beyond March 18, 2016, were "terminated." *Id.* The July Letter stated that "[the] claim for LTD benefits has been denied because [Prudential] determined that the medical information received did not support impairment that would prevent [Mr. Tuttle] from performing the material and substantial duties of your regular occupation," and referenced the May Letter for "[a] complete explanation of that decision." *Id.* at 4. Additionally, the July Letter referred to Mr. Tuttle's response to the May Letter as his "first request to appeal" the denial of benefits.

The July Letter addressed Mr. Tuttle's claims in a section entitled "Appeal Determination." *Id.* at 6. It stated that the "medical records support restrictions and limitations" through March 18, 2016. Prudential stated that the period beyond March 18, 2018, would not be covered because they had "determined that the information in your file does not support impairment that would prevent you from performing material and substantial duties of your

5

regular occupation." *Id.* The July Letter concluded with identical language regarding Mr. Tuttle's appeal rights as the May Letter. *Id.* at 6–7.

### B. Procedural History

Mr. Tuttle filed this lawsuit on January 23, 2017, seeking a declaratory judgment. *See generally* Compl. The Complaint stated that Mr. Tuttle had "exhausted all administrative appeals and remedies under ERISA," *id.* ¶ 29, and that Defendants had wrongly denied him benefits under the policy. He also seeks those benefits, interest, and attorney's fees. *Id.* at 7.

Prudential now moves to dismiss. *See* Def. Mot. Dismiss, ECF No. 12; Def. Mem. in Support ("Def. Mem."), ECF No. 12-1. It argues that dismissal is warranted for two reasons. First, it argues that Mr. Tuttle is precluded from bringing ERISA claims because he failed to disclose them in a prior bankruptcy proceeding. Second, it argues that Mr. Tuttle failed to exhaust his administrative remedies. The company seeks dismissal with prejudice.

Mr. Tuttle opposed the motion. *See* Pl. Resp., ECF No. 17. He argues that Prudential's estoppel argument is misplaced, because any prior position he might have taken in bankruptcy court was inadvertent. *Id.* at 5–6. He also argues that he properly exhausted his claims. *Id.* at 6–13.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of any claim that fails "to state a claim upon which relief can be granted." In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Id*. at 679. "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Instead, a plaintiff must allege facts that "nudge[] their claims across the line from conceivable to plausible . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a 12(b)(6) motion, the court must accept all factual allegations in the complaint as true and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002), cert. denied, 537 U.S. 1089 (2002). The proper consideration is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that he should be entitled to offer evidence to support his claim. *See id.* (citation omitted). Courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," though they may also consider documents that are "incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 258 (S.D.N.Y. 2008).

### III. DISCUSSION

Prudential moves to dismiss Mr. Tuttle's complaint, raising two separate arguments. First, Prudential argues that Mr. Tuttle failed to administratively exhaust his claim because he did not appeal the July Letter. Second, it argues that Mr. Tuttle failed to disclose the disability benefits he claims in this lawsuit during a prior bankruptcy proceeding. Prudential claims that this failure means that Mr. Tuttle is now estopped from asserting he is entitled to those benefits.

### A. Exhaustion

The first issue is whether Mr. Tuttle properly exhausted before filing this lawsuit. The Second Circuit has long recognized that there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Construction*, 788 F.2d 76, 79 (2d Cir. 1986)). The exhaustion requirement serves three primary purposes: to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo." *Kennedy*, 989 F.2d at 594.

Given the exhaustion requirement, a plaintiff must "pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are denied." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002). The requirement is an affirmative defense; the failure to exhaust is not jurisdictional. *See Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006) ("Indeed, the requirement is purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make ERISA administrative exhaustion a jurisdictional requirement.").

As noted above, Mr. Tuttle received two letters addressing his claim from Prudential. The first letter, dated May 6, 2016, denied benefits because the company found "no medically supported restrictions and limitations that would preclude you from returning to work to your regular occupation." May Letter at 1. The letter stated that Mr. Tuttle would have to appeal once, but then could either file a voluntary second appeal or "file a lawsuit under the Employee

Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a second appeal will not affect your rights to sue under ERISA." *Id*. at 6. Mr. Tuttle filed that initial appeal on May 31, within the deadlines set by the policy.

Prudential then sent a second letter, dated July 15, 2016. This letter granted additional benefits to Mr. Tuttle, overturning part of the May Letter. But it also upheld a substantial part of the previous decision to deny benefits. July Letter at 1 ("We have determined that you are eligible for additional benefits and have reinstated your claim effective March 16, 2016 with benefits payable through March 18, 2016. LTD benefits beyond March 18, 2016 have been terminated."). The July Letter had identical appeal language.

Prudential focuses solely on the July letter, arguing that because Mr. Tuttle did not appeal the letter, and filed suit in court instead, he had failed to exhaust the procedures specified in the plan. According to Prudential, "in order to exhaust his administrative remedies under the Plan, Plaintiff must file one administrative appeal contesting the Prudential's July 15, 2016 termination of LTD benefits." Def. Mem. at 9. Prudential argues that Mr. Tuttle never filed an appeal of that letter, and therefore it argues the Complaint should be dismissed with prejudice. *Id.* at 10 (citing *Davenport*, 249 F.3d at 136).

Mr. Tuttle's argument focuses on the May letter. He appealed that decision, and the July Letter was in response to that appeal. He therefore argues that "[p]ursuant to the long term disability plan and the information contained in the May 6, 2016 denial letter, the plaintiff is only required to file one level of appeal in order to exhaust his administrative remedies." Pl. Resp. at 6. He states that ERISA claims do not require issue exhaustion, and "a general administrative appeal is sufficient to meet the requirement of exhaustion without the need to address in the

appeal any details or specifics regarding particular issues on the claim." *Id.* at 7. Finally, he argues that forcing Mr. Tuttle to exhaust by appealing a second time would create a "continuous cycle of appeals from appeals." *Id.* at 8. This, Mr. Tuttle argues, would be contrary ERISA and the specific provisions of the plan. *Id.*

The Court agrees with Mr. Tuttle. The record before the Court shows that the July Letter was, effectively, a decision on Mr. Tuttle's first appeal. The July Letter refers to its findings as an "Appeal Determination." It also explicitly references Mr. Tuttle's "first request to appeal" the denial of benefits. The July Letter is therefore best understood as a decision on Mr. Tuttle's first appeal and, as such, the final step Mr. Tuttle must take before he may file in federal court. *Cf. Wheeler v. Prudential Fin., Inc.*, 499 F. Supp. 2d 219, 221 (N.D.N.Y. 2007) (denying motion to dismiss and rejecting Defendant's argument that "this second statement indicates that filing a lawsuit without submitting to a second level of appeal equals a failure to exhaust administrative remedies")

This conclusion is supported by the terms of the policy itself and the text of the two letters. *See Kennedy*, 989 F.2d at 594 ("Thus, exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy."). The plan description states: "Your decision to submit a benefit dispute to this voluntary second level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a second level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies." Summary Plan Description at 57. Attachments sent with the May Letter also include similar language: "After completion of the first level of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows

10

you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a second appeal will not affect your rights to sue under ERISA." May Letter at 6.

Mr. Tuttle filed an initial appeal, after which he could choose to file a voluntary second appeal or pursue his claim in court. *See, e.g.*, *Sowers v. Sun Healthcare Grp., Inc.*, No. 2:06-CV-230, 2008 WL 3285752, at *6 (S.D. Ohio Aug. 8, 2008) ("There is no dispute that Plaintiff filed a timely appeal of Defendant's decision denying coverage for her surgery. Defendant's argument that Plaintiff's claim is barred for failure to exhaust her administrative remedies by filing a second, voluntary appeal is without merit."); *McAfee v. Metro. Life Ins. Co.*, No. CIV. S-05-0227WBSKJM, 2006 WL 1455431, at *4 n.4 (E.D. Cal. May 24, 2006) ("The court therefore declines to hold plaintiff to an exhaustion requirement encompassing voluntary appeals, much less an exhaustion requirement that could extend indefinitely.").

As a result, Mr. Tuttle properly exhausted his remedies through the procedures specified in the policy. Prudential's motion to dismiss, with respect to the exhaustion argument, is therefore denied.

### B. Judicial Estoppel

The second issue is whether Mr. Tuttle's claim is barred by the doctrine of judicial estoppel. *See* Def. Mem. at 5–7. The company argues that "Plaintiff's failure to disclose his potential LTD benefits and his claim against Prudential to the Bankruptcy court, estops him from pursuing his claim again Prudential here." *Id.* at 5. In response, Mr. Tuttle argues that judicial estoppel does not apply to his case because his actions were inadvertent. *See* Pl. Opp. at 5 (citing *Jethroe v. Omnova Solutions Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" and intended to "protect the integrity of the judicial process" *New Hampshire v. Maine*, 532 U.S.

742, 749–50 (2001) (internal citations and quotation marks omitted). The doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 794 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 (2000).

When deciding whether judicial estoppel applies, courts generally consider three factors[2]: (1) whether the party's position is clearly inconsistent; (2) whether the court adopted the party's former position in an earlier proceeding; and (3) whether "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In Re Adelphia Recovery Trust*, 634 F.3d 678, 695–96 (2d Cir. 2011) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)). Within the Second Circuit, however, "we further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain," and therefore "judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." *Id.* (citing *DeRosa,* 595 F.3d at 103, and *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997)) (internal quotation marks and alterations omitted).

As to the first two factors, first, the company argues that the doctrine applies because Mr. Tuttle's position is inconsistent with his earlier position in a sworn petition in his bankruptcy proceedings. *Id.* at 6. Second, it argues that the Bankruptcy Court adopted that position when it discharged his claim, and that Mr. Tuttle failed to amend his claims "despite being aware that his LTD benefits were terminated on July 15, 2016, and despite being aware of his right to appeal that decision." Mr. Tuttle appears to concede these two points. *See* Pl. Opp. at 5 ("In the present

---

[2] The United States Supreme Court cautioned, when it addressed these three factors, that "[i]n enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751.

case, the plaintiff's claims might be alleged to be inconsistent with his prior legal position represented in his bankruptcy proceedings. The bankruptcy court also accepted his prior position.").

Prudential argues that the third factor is also met because "[d]etermination of the ownership of assets is at the core of the bankruptcy process" and that Mr. Tuttle's bankruptcy proceedings would have been binding on debtors and creditors. Def. Mem. at 7 (quoting *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 118 (2d Cir. 2014)). "Allowing Plaintiff to pursue his claim against Prudential at this juncture," Prudential argues, "after the Bankruptcy Court discharged Plaintiff's bankruptcy claim relaying Plaintiff's prior omission of the LTD claim, would compromise the integrity of the bankruptcy process, and would grant a windfall to Plaintiff of income that he successfully managed to hide from his creditors." Def. Mem. at 7.

Mr. Tuttle does not address this factor, but rather raises two separate considerations. First, he argues his actions were inadvertent, citing to caselaw from the Court of Appeals for the Fifth Circuit that states the third factor this Court should consider is whether the party against whom estoppel is sought acted inadvertently. Pl. Resp. at 5 (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). He states that he simply was not aware that his bankruptcy attorney had not included the Prudential claim in his papers. He also claims that his prior inconsistent position was a good faith mistake, "he has demonstrated no motive to conceal, and has taken steps to correct his inadvertent nondisclosure with the courts." Pl. Resp. at 6.[3]

The Second Circuit has recognized that judicial estoppel may not be applicable if there is a good faith or inadvertent mistake. *See, e.g.*, *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d

---

[3] Mr. Tuttle does not address what these actions might be.

Cir. 1997) (noting judicial estoppel does not apply "when the first statement was the result of a good faith mistake . . . or an unintentional error") (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995); *Konstantinidis v. Chen*, 626 F.2d 933, 939–40 (D.C. Cir. 1980)); *see also Leahey v. SP Center, LLC*, 579 B.R. 13, 19 (S.D.N.Y. 2017) (holding that "[a]bsent a showing of bad faith on the part of the plaintiffs, there is no reason to preclude them from pursuing" a claim inconsistent with one taken before the bankruptcy court).

The consideration of bad faith or mistake, however, is a fact-intensive inquiry, more appropriate at a later stage in this case. The Court does, arguably, have the ability to consider the bankruptcy case at the motion to dismiss stage, at least as far as it involves matters in the public record and of which the Court might take judicial notice. *See Leonard,* 199 F.3d at 107 ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.") (internal quotation marks and citations omitted); *Muhammad v. Schriro*, No. 13-CV-1962 PKC, 2014 WL 4652564, at *3 (S.D.N.Y. Sept. 18, 2014) ("When a general release has been filed with a court and is a matter of public record, a court may properly take judicial notice of it, and consider it on a motion to dismiss.").

But the Court would be unable to determine whether Mr. Tuttle had demonstrated bad faith, or whether his position before the Bankruptcy Court was truly taken inadvertently. The Court therefore cannot and should not decide, on the record currently before it, whether Mr. Tuttle had taken steps to counsel his bankruptcy attorney on any benefits he thought he was owed, or what steps he had taken to rectify an omission at the bankruptcy court. The application

of the doctrine of judicial estoppel is "probably not reducible to any general formula" and it may apply different "in specific factual contexts." *New Hampshire*, 532 U.S. at 751.

Given the fact-bound nature of the inquiry, Defendant's motion will be denied as to the estoppel claim, but without prejudice to renewal upon filing of a motion for summary judgment, after the completion of discovery in this case.

## IV. CONCLUSION

Defendant's motion to dismiss, ECF No. 12, is **DENIED.**

SO ORDERED at Bridgeport, Connecticut, this 9th day of March, 2018.

    /s/ Victor A. Bolden  
Victor A. Bolden  
United States District Judge